**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| MICHAEL ESPOSITO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> I.Q. DATA INTERNATIONAL, INC., <br><br> Defendant. | **Civil Action No. 2:18-cv-00437-JES-CM** |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

**ARGUMENT SUMMARY**

Plaintiff Michael Esposito ("Plaintiff") alleged that Defendant I.Q. Data International, Inc. ("Defendant") sent collection letters to Plaintiff and class members that demanded interest payments on Surety Bonds that the class members had purchased.  The Surety Bonds at issue were purchased in lieu of paying a security deposit at a residential apartment complex.  Defendant's collection letters included a demand for interest that allegedly accumulated at an annual rate of 004.75 percent per annuum.  Plaintiff alleged that this conduct violated state and federal debt collection and consumer protection statutes.

After engaging in motion practice and discovery, Plaintiff and Defendant (collectively, "Parties") began substantive, in-depth settlement discussions.  After several failed attempts, including an in-person meeting between counsel for the parties, and extensive negotiations and the exchange of confidential information, the Parties finally achieved the proposed class settlement.  The Settlement Agreement established a common settlement fund totaling $350,000.00.  This fund will pay Settlement Class Members a cash settlement payment for the release of all statutory, common law, and related claims alleged or that could have been alleged in the action against Defendant that relate, concern, arise from, or pertain in any way to the collection letters sent by or on behalf of Defendant.  In addition, Defendant has agreed to refund *all* monies received as a result of this collection campaign, and further agreed to never engage in this conduct complained of in Plaintiff's Complaint at any time in the future. Defendant also agreed to pay the full cost of notice to the class, which was approximately $20,000.00.   Critically, Settlement Class Members

will not need to undertake any rigorous steps to get the benefits of the Settlement.[1]  This is an opt out, common-fund settlement, specifically designed to provide redress for the greatest number of Class Members possible. There is no claims process. Each class member will be mailed their compensation without the necessity of submitting a claim form.

The proposed class action warrants final approval. It is fair, reasonable, and adequate under all relevant factors used by courts in the Eleventh Circuit. Out of the 1,465 class members, there was not a single objection to the settlement.  Moreover, after making a significant notice campaign to the class members, there have been only two opt outs— which is less than 0.1% of the Settlement Class.  (See affidavit of David W. Epperly, Claims Administrator, attached hereto as Exhibit "A.")  Thus, other Settlement Class Members evidently share in Plaintiff's belief that the proposed settlement should receive final approval.  Accordingly, Plaintiff requests that the Court approve the Settlement Agreement and enter an Order granting final approval.

**BACKGROUND**

**A.  The Underlying Lawsuit**

In this Action, Mr. Esposito alleges that he and other members of the proposed Settlement Class each received a collection letter from I.Q. Data International, Inc. The Complaint alleged that the collection letters violated the Florida Consumer Collection Practices Act § 559.55, *et seq.* ("FCCPA") and the Fair Debt Collection Practices Act 15

---

[1] All capitalized terms have the same meaning as stated in the Parties' Settlement Agreement.

U.S.C. § 1692, *et seq.* ("FDCPA"), and sought statutory damages, attorneys' fees, and litigations costs from I.Q. Data International, Inc.   Plaintiff alleges that I.Q. Data International, Inc. improperly demanded the payment of interest charges that were not due and owing. (See ECF No. 1)

**B.  The Settlement Negotiations**

The Parties' Settlement was the product of serious, informed, arm's-length, and non-collusive negotiations by competent and experienced counsel.  Before engaging in settlement negotiations, the Parties engaged in discovery and exchanged confidential information.  Defendant then filed a Motion to Dismiss Plaintiff's Complaint, to compel arbitration, and to strike all class allegations.  Plaintiff filed a substantial memorandum in opposition, to which Defendant filed a reply brief. The parties then filed a motion to stay the case for a period of 30 days, which was granted by this Court.  During the 30-day period, the parties exchanged additional discovery, including net worth information for the Defendant.   On the 30th day of negotiations, the parties were finally able to achieve a class wide settlement.

**C.  The Proposed Settlement**

**1.  Settlement Benefits**

The proposed settlement provides two main benefits.  First, Defendant has established a common settlement fund totaling $350,000.00.  After the payment of administrative costs, attorneys' fees, and a case contribution award to Plaintiff, all Settlement Class Members will receive a single, pro rata payment by check as monetary settlement relief under the Settlement Agreement, which is estimated at $155.00 per class member. Second,

Defendant shall conduct (or already has conducted) a financial reconciliation of all funds collected as a result of this collection campaign, and return all such sums to the affected individuals. Defendant will pay this reimbursement, if applicable, to the Settlement Class Members in addition to the $350,000.00 settlement fund described above.  Defendant also agreed to pay the full cost of notice to the class, which was approximately $20,000.00. Finally, Defendant has agreed to never engage in the conduct complained of in Plaintiff's Complaint at any time in the future.

### 2. The Settlement Class and the Release

The Settlement Class is an opt-out class under Fed. R. Civ. P. 23(b)(3) that includes the following class of persons:

> Within the applicable statute of limitation, all natural persons in Florida, (a) who executed a "SureDeposit" tenant bond or a substantially similar standardized residential tenant bond instrument; and (b) whom Defendant sent a collection letter representing that the debt it was collecting included interest on the bond debt.

Excluded from the Settlement Class are any: (i) individuals who are or were, during the Class Period, officers or directors of the Defendant or any of its respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; and (iii) all borrowers who file a timely and proper request to be excluded from the Settlement Class.  The Settlement Class Period runs from June 21, 2016 and June 21, 2018.

4

Settlement Class Members who do not exclude themselves will release the claims raised and all claims that could have been raised in this case.  The release is for all claims against the Defendant related to the collection letters that are identified in Plaintiff's class action complaint.

### 3.  Attorney's Fees, Expenses, and Incentive Award

As more fully outlined in Plaintiff's Motion for an Award of Attorney Fees, Expenses, and Incentive Award, the Settlement proposes to pay attorneys' fees of one-third the Settlement Fund, and a $5,000.00 incentive award to Plaintiff, all subject to this Court's approval. (ECF No. 44).

### D.  Preliminary Approval and Notice

On January 15, 2019 Plaintiff submitted an Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 39) and a Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement.  On April 25, 2019, the Court entered an Order granting preliminary approval of the class action settlement (the "Preliminary Approval Order"). (ECF No. 42). The Preliminary Approval Order authorized Epperly Resolutions as the Settlement Administrator and directed the Settlement Administrator to: (a) obtain updates, if any, to the addresses for each Settlement Class Member identified in the Settlement Class Member list as provided for in the Settlement Agreement and (b) provide notice of the Settlement and the Final Approval Hearing to each Settlement Class Member by mailing a copy of the Class Notice, substantially in the form of the document attached to the Agreement as ECF No. 39-2, to

each Settlement Class Member at the address set forth on the Settlement Class Member List as updated by the Settlement Administrator. (*Id.* at 9-10).

On or before June 11, 2019, the Settlement Administrator, after updating the addresses for all Settlement Class Members, caused copies of the Notice to be mailed to each Settlement Class Member at the address set forth on the Settlement Class Member List as updated by the Settlement Administrator. (Exhibit A, Epperly Decl. at ¶ 5).

**E.  Class Members' Response to the Proposed Settlement**

The response to the Settlement has been overwhelmingly positive.  There are zero Settlement Class Member who objected to the Settlement, and only two have opted out. The two opt-outs are less than 0.1% of the total class of 1,465 Settlement Class Members.

<u>**ARGUMENT**</u>

Because the Parties provided class members with the best practicable notice, including a fully functional website with all relevant documents attached thereto, (www.mespositosettlementinfo.com) and the Settlement is fair, adequate, and reasonable, the Court should grant Plaintiff's Motion for Final Approval.

**A.  The Parties Provided the Best Practicable Notice**

Before a court can exercise jurisdiction over the claims of absent class members, certain minimal due process requirements must be satisfied.  *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1378 (S.D. Fla. 2007).  Absent class members must receive notice and an opportunity to be heard and to participate in the litigation whether in person or through counsel. Fed. R. Civ. P. 23(c)(2)(B).  The notice must be the "best practicable, 'reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Here, the notice program was developed by Epperly Resolutions ("Epperly") in connection with its duties as the Settlement Administrator as appointed by the Court. (See Exhibit "A.") Defendant provided Epperly with contact information for 1,465 Settlement Class Members. (*Id.* at ¶ 3). On or before June 11, 2019, Epperly mailed the Court-approved Class Notice via U.S. First Class Mail, to the 1,465 Settlement Class Members. (*Id.* at ¶ 5). A total of 361 Settlement Class Members' notice attempts were returned by the U.S. Postal Service as undeliverable. (*Id.* at ¶ 6). Epperly used address research and tracking efforts from services like TransUnion and proprietary records to research the addresses for class members re-mailing. (*Id at 6.*)

Epperly continued to make remailing attempts and each time, reduced the number of undeliverable notices, first from 361 until only 100 class members had the most recent re-mail attempt returned as undeliverable, representing only 6.8% of the Settlement Class. (*Id.* at at ¶ 11). In the end, the notice process reached the last known address for 93.2% of all Settlement Class Members.

## B. The Settlement is Fair, Adequate, and Reasonable

The law has long been settled in the Eleventh Circuit: "In determining whether to approve a proposed [class action] settlement, the cardinal rule is that the district court must

7

find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Perez*, 501 F. Supp. 2d at 1379 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).[2] "Determining the fairness of the settlement is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's exercise of discretion should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.* As then-Chief Judge King stated in *Behrens v. Wometco Enterprises, Inc.*:

> Litigants should be encouraged to determine their respective rights between themselves. This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness.

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (internal citations omitted). To aid in this determination, the Eleventh Circuit has identified six factors that a district court should examine when assessing whether a proposed settlement is fair, adequate and reasonable. These factors include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  "In evaluating these considerations, the district court should not try the case on the merits."  *Behrens*, 118 F.R.D. at 539 (citing *Cotton*, 559 F.2d at 1330). Rather, the court "must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'"  *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002) (quoting *Cotton*, 559 F.2d at 1330).

### 1.  The *Bennett* Factors Weigh in Favor of the Settlement

As applied to this case, the factors outlined in *Bennett*, 737 F.2d 982 support a finding that the Settlement is fair, adequate, reasonable, and worthy of final approval.

### a.  *Bennett* Factor One: Likelihood of Success at Trial

Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement.  *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330–31 (S.D. Fla. 2001).  Here, Plaintiff faced hurdles both on the merits and in obtaining contested class certification.

On August 24, 2018, Defendant filed a Motion to Dismiss Plaintiff's Complaint, to compel arbitration, and to strike all class allegations. (ECF No. 19).  Defendant argued that the Plaintiff signed a tenant bond with an arbitration clause and a class waiver, and that the arbitration clause "is very broad and applied to any dispute or claim arising out of or relating to this agreement."  Id at 1.

Plaintiff filed a response in opposition to Defendant's motion on September 17, 2018. (ECF No. 24)

Defendant then filed a motion for leave to file a reply brief (ECF No. 25-1), which this Court subsequently granted. (ECF No. 26) Defendant then filed its reply brief on October 10, 2018, and raised additional arguments as to why Plaintiff's Complaint should be dismissed, why Plaintiff's claim should be compelled to arbitration, and why all class allegations should be struck. (ECF No. 27)

While these motions were pending, counsel for each party engaged in settlement negotiations. Towards that end, the parties filed a joint motion to stay the proceedings for a period of 30 days. (ECF No. 30) The parties continued to exchange discovery, including Defendant's present net worth. Finally, on the 30th day of the stay, and after continuous settlement negotiations, the parties were able to agree on a class wide settlement. Had the parties not reached a settlement, Plaintiff and the Class Members faced the possibility that this Court could agree with Defendant's position, and compelled Plaintiff's claims to arbitration, and struck all class allegations. Thus, the Settlement provides the class a sure result in the face of substantial legal uncertainty.

In addition, Plaintiff's ability to obtain contested class certification was far from certain. Although Plaintiff was confident that the Court could certify a class, the settlement takes the uncertainty (and the manageability and superiority issues) off the table, clearing the way for an excellent class resolution.

    b. ***Bennett* Factors Two and Three: Range of Recovery and the Point at Which Settlement is Fair**

"The second and third considerations of the *Bennett* test are easily combined." *Behrens*, 118 F.R.D. at 541. A district court must first determine the appropriate standard of damages (to calculate the range of recovery), and then determine where in this range of

recovery a fair, adequate and reasonable settlement amount lies. *Id.* The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable. *See id.* at 542 (explaining that "a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

Plaintiff's class-wide FCCPA claim against Defendant is capped at a statutory damages recovery for the Class as the lesser of $500,000 or one percent of Defendant's net worth. *See* Fla. Sta. §559.72(2). Plaintiff's class- wide FDCPA claim is also capped at a statutory damages recovery for the Settlement Class as the lesser of $500,000 or one percent of I.Q. Data's net worth. *See* 15 U.S.C. § 1692k(a). Defendant provided current net worth data given under penalty of perjury which revealed Defendant's net worth to be $17,400,000.00. Accordingly, the maximum amount of money that Plaintiff and the Class Members could have won at trial was $348,000.00. (1% of Defendant's net worth for the FDCPA and FCCPA claim.) However, the claim settled for $350,000.00, which is more than Plaintiff and the Class Members could have won at trial. Additionally, Defendant has agreed to refund all monies received as a result of this collection campaign, to never engage in the conduct complained of in Plaintiff's Complaint, and Defendant also paid for the full cost of class notice, which was approximately $20,000.00. Further, there is no reversion clause in the settlement agreement, so none of the funds will revert to the Defendant- any unclaimed funds will be given to a mutually agreed upon Cy Pres recipient.

Given the capped range of recovery on a class basis, and the relief that is part of the Settlement Agreement, the Settlement can only be categorized as excellent.

    c. ***Bennett* Factor Four: Complexity, Expense, and Duration of the Litigation**

The law favors compromises in large part because they are often a "speedy and efficient resolution of long, complex, and expensive litigation." *Behrens*, 118 F.R.D. at 543. Moreover, as the Eleventh Circuit has noted: "In these days of increasing congestion within the Federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331.

The issues in this case, both technical and legal, are complex. If this case proceeded to trial (or even appeal), the costs would increase dramatically for all Parties. The intrinsic value of the net settlement payment to Settlement Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation, including that the Court could grant Defendant's motion to dismiss Plaintiff's Complaint, compel the claim to arbitration, and strike all class allegations. Accordingly, there was substantial risk to the Plaintiff and the Class members at the time of settlement. Thus, the costs and uncertainty of litigation, and the expense and delay that accompany the possible appeal process, support approval.

While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead to rationally and reasonably forgo the expense and uncertainty of continued litigation, and focus their efforts on achieving a fair and adequate settlement that accounted for the risks of further litigation.

    d. ***Bennett* Factor Five: Substance and Amount of Opposition to the Settlement**

The Settlement should also be approved because the Settlement Class Members have overwhelmingly accepted it. "In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

A low percentage of objections demonstrates the reasonableness of a settlement. *Id.* Here, there are zero objectors and only two opt outs- this militates in favor of the Court approving the Settlement Agreement.

### e. *Bennett* Factor Six: The Stage of the Proceedings

A court evaluates the stage of the proceedings at the time of settlement to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation. *See Behrens*, 118 F.R.D. at 544.

Here, the initial complaint was filed on June 21, 2018. As noted above, pending before the Court was a fully briefed motion to dismiss Plaintiff's Complaint, compel the claim to arbitration, and to strike all class allegations. The parties were able to exchange discovery both formally and informally, and used the entire 30 day stay in which to effectuate a class wide settlement. Although the Parties reached a class-wide settlement at a relatively early stage of the litigation, they knew the merits of the case and the associated risks.

### 2. The Judgment of Experienced Counsel and the Absence of Collusion Further Support the Settlement

In addition to the *Bennett* factors, a district court may also rely upon the judgment of experienced counsel for the parties. *See Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628 (11th Cir. 2015) (citing *Cotton*, 559 F.2d at 1330); *Perez*, 501 F. Supp. 2d at 1384. Absent evidence of fraud or collusion, a court should "be hesitant to substitute its own judgment for that of counsel." *Greco*, 635 Fed. Appx. 628.

The Court has already concluded that Class Counsel has the experience to adequately represent the Settlement Class Members in this action (ECF No. 42 at 7), and Defendant's counsel are equally well-versed in class action litigation. Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *See, e.g., Association For Disabled Americans, Inc.*, 211 F.R.D. at 470.

Based on their experience, it is Class Counsel's informed position that the Settlement is reasonable, adequate, and fair.

<u>CONCLUSION</u>

This Settlement represents an excellent result for the Settlement Class Members, which is more than fair, adequate, and reasonable. Accordingly, Plaintiff's motion for Final Approval should be granted and the Court should approve the parties Settlement Agreement.

Dated: September 18, 2019.                    Respectfully submitted,

/s/ Jordan A. Shaw
JORDAN A. SHAW, ESQ.
Fla. Bar No.: 117771
jshaw@zpllp.com
mperez@zpllp.com
ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 595-6060
Facsimile: (954) 989-7781

/s/ Christopher Legg
Christopher Legg, Esq.
CHRISTOPHER W. LEGG, P.A.
FL Bar No.: 44460
Chris@theconsumerlawyers.com
499 E. Palmetto Park Rd., Ste. 228
Boca Raton, FL 33432
Office: 954.962.2333

/s/ J. Dennis Card Jr.
J. Dennis Card, Jr., Esq.
FL Bar No: 0487473
E-mail: dennis@cloorg.com
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@cloorg.com
CONSUMER LAW
ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132

/s/ Kevin Rajabalee
Kevin Rajabalee, Esq.
KR LEGAL, P.A.
FL Bar #: 119948
kevin@krlegal.net
3440 Hollywood Blvd., Ste. 415
Hollywood, FL 33021
(954) 667-3096

*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ J. Dennis Card Jr.
J. Dennis Card, Jr., Esq.
FL Bar No: 0487473

15